1
2
3
4

ROGERIO SCOTTON
LEGAL HELP 4 YOU LLC
160 W Camino Real # 102
City: Boca Raton, State: Florida, Zip: 33432
Email: info@legalhelp4y.com

FILED BY _____ MA _____ D.C.

AUG 0 5 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

5
6
7
8

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# (WEST PALM BEACH DIVISION)

9
10

) Case No.:

11
12
13

**ROGERIO SCOTTON,**
**Owner of Legal Help 4 You LLC,**
**individually and as an advocate and**
**human rights whistleblower,**

14
15
16

                    **Plaintiff,**

**vs.**

) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 

**COMPLAINT FOR VIOLATIONS**
**OF INTENATIONAL HUMAN**
**RIGHTS AND PETITION FOR**
**HABEAS CORPUS**

17
18
19
20

**ALEXANDRE DE MORAES,**
**Minister of the Supreme Federal**
**Court of Brazil,**

                    **Defendant.**

) 
) 
) 
) 
) 
) 

21
22
23
24
25
26
27
28

**COMES NOW,** the Plaintiff, Rogerio Scotton, appearing pro se, and respectfully

submits this Complaint pursuant to his rights as a concerned individual, advocate, and

human rights whistleblower, bringing this action on behalf of the public interest and

international human rights obligations, in light of the ongoing unlawful detention and

human rights violations inflicted upon Daniel Lucio Silveira, a former elected Congressman of Brazil.

This lawsuit seeks judicial recognition and emergency review of alleged violations of international law, human rights treaties, and federal statutory obligations committed by Defendant Alexandre de Moraes, currently serving on the Brazilian Supreme Federal Court (STF), whose acts—described in detail below—place the life, safety, and constitutional freedoms of Mr. Silveira in imminent danger and constitute a pattern of politically motivated persecution under color of law.

## PRELIMINARY STATEMENT

This action seeks immediate judicial intervention to prevent irreparable harm to the life, health, and liberty of Mr. Daniel Lucio Silveira—a former Brazilian Congressman unlawfully imprisoned under the political orders of Justice Alexandre de Moraes, despite having received a full and unconditional presidential pardon under Brazilian constitutional law. Mr. Silveira is currently suffering grave medical complications while being detained under legally void charges, and his ongoing imprisonment violates the most basic principles of international human rights, due process, and the rule of law.

This case presents a rare and urgent intersection of international judicial misconduct, defiance of U.S. court authority, and systemic abuse of political power by a foreign judge who has directly interfered with U.S. legal processes, ridiculed

Complaint for Violations of International Human Rights and Petition for Habeas Corpus

sanctions imposed under the Global Magnitsky Act, and used American-based digital platforms to target U.S. citizens and institutions. If the U.S. government and this Court do not act swiftly, the unlawful detention of a pardoned individual may result in serious physical harm or death, and the credibility of U.S. sanctions enforcement, constitutional values, and human rights leadership may be severely undermined. The Court is respectfully urged to grant emergency relief and notify relevant executive agencies without delay.

# I. INTRODUCTION

This action arises from the repeated, grave, and ongoing human rights violations committed by Alexandre de Moraes, Justice of the Supreme Federal Court of Brazil, against various individuals including Mr. Daniel Lucio Silveira, a former Brazilian Congressman wrongfully imprisoned under politically motivated charges, in violation of international treaties, U.S. law, and norms of civilized nations.

Plaintiff seeks declaratory relief affirming these violations, and injunctive relief compelling the U.S. Department of Justice and appropriate executive agencies to investigate and act under the Global Magnitsky Human Rights Accountability Act, Alien Tort Statute, and Torture Victim Protection Act.

Plaintiff further seeks this Court's recognition that continued imprisonment of Mr. Silveira, despite a ***formal presidential pardon*** and mounting *medical urgency*, violates binding international human rights instruments and constitutes arbitrary detention.

# II. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to:

28 U.S.C. § 1331 (Federal Question)

28 U.S.C. § 1350 (Alien Tort Statute)

28 U.S.C. § 1343 (Civil rights and equal protection)

Torture Victim Protection Act (TVPA), Pub. L. No. 102-256, 106 Stat. 73

Global Magnitsky Act, 22 U.S.C. § 2656 note

International Covenant on Civil and Political Rights (ICCPR)

Venue is proper under 28 U.S.C. § 1391(b), as Plaintiff resides in this district (Boca Raton, FL), and relevant international conduct impacts U.S. policy and international obligations of the United States.

"This Court further has personal jurisdiction over Defendant pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, as Defendant has directed intentional acts toward the United States, including public defiance of U.S. judicial authority,

unlawful use of U.S.-based social media platforms to disseminate politically motivated persecution, and reputational attacks on U.S. citizens and institutions. Such acts establish sufficient minimum contacts to satisfy due process and permit the exercise of extraterritorial jurisdiction under the Alien Tort Statute and Global Magnitsky Act."

# III. PARTIES

Plaintiff, Rogerio Scotton, is a U.S. resident, legal advocate, founder of Legal Help 4 You LLC, and whistleblower on international judicial misconduct.

Defendant, Alexandre de Moraes, is a Justice of the Supreme Federal Court (STF) of Brazil. He is sued in his personal capacity for acts taken ultra vires, in violation of U.S. and international law.

# IV. FACTUAL ALLEGATIONS

## Protection Against Retaliatory Use of Brazilian Laws

Plaintiff further states that this action is brought in good faith pursuant to the U.S. Constitution, international human rights treaties, and principles of justice and due process. The undersigned Plaintiff does not reside in Brazil at this time, and any appearance of U.S. domicile is legally permissible in the interest of personal safety and free expression. Plaintiff affirms that this legal motion does not violate any Brazilian law, nor does it constitute *"fake news," "disinformation,"* or an *"offense against*

***public authority,"*** as prohibited by Brazil's *Lei 14.197/2021 or Article 331* of the Brazilian Penal Code. Rather, the Plaintiff seeks legitimate redress of internationally recognized human rights violations and judicial abuse. It is anticipated that Defendant Moraes, or agents acting in his interest, may attempt to mischaracterize this motion as an attack on the ***"democratic rule of law."*** Such a claim is disingenuous and contradictory, especially given Moraes's *own conduct—including public defiance of U.S. sanctions, use of obscene gestures at a soccer stadium,* and statements refusing to recognize the jurisdiction of international or U.S. legal orders. If Daniel Silveira was prosecuted and imprisoned for *posting a political video,* then Defendant Moraes must *also be held accountable under the same laws* for his political statements and offensive behavior in public forums. Selective prosecution and retaliatory use of vague legal provisions violate the American Convention on Human Rights, the U.N. Declaration on Human Rights Defenders (1998), and the principle of legal equality. Plaintiff therefore demands judicial recognition that this lawsuit is a lawful exercise of protected speech and whistleblower activity, and requests that any attempt to use Brazilian criminal statutes to retaliate be declared incompatible with international norms and the bilateral relationship between the United States and Brazil.

In 2021, Daniel Lucio Silveira, a sitting Congressman in Brazil, posted videos criticizing Justice Alexandre de Moraes for repeated constitutional violations and authoritarian behavior.

**Conclusion: Equal Justice Requires Judicial Humility**

Justice is not upheld by silencing dissent.

It is not defended through obscene gestures, contradictory alliances, or abuse of criminal statutes. It is not proven through threats, censorship, or propaganda.

It is proven in court, through facts, fairness, and courage.

Let this Court declare that no man is above the law—not even a Supreme Court Justice who once called others corrupt and now punishes those who say the same of him.

Let the burden shift back to Justice Moraes—not to retaliate, intimidate, or imprison, but to explain, justify, and answer under the very laws he uses against others.

This is not a crime. This is a demand for justice. Let the record so reflect.

# VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

   **a.** Declare that Defendant Alexandre de Moraes has committed violations of international law, the Alien Tort Statute (28 U.S.C. § 1350), and the Torture Victim Protection Act (TVPA, Pub. L. No. 102-256), including but not limited to torture, cruel and inhumane treatment, arbitrary detention, suppression of political speech, denial of medical care, and persecution of political opponents;

Complaint for Violations of International Human Rights and Petition for Habeas Corpus

**b.** Declare that the ongoing imprisonment of Daniel Lucio Silveira constitutes unlawful arbitrary detention and a gross violation of international human rights law, specifically the International Covenant on Civil and Political Rights (ICCPR), the American Convention on Human Rights, and customary international humanitarian norms;

**C.** Order the United States Department of Justice to immediately ***indict Alexandre de Moraes for violations of federal and international law***, including his knowing and willful *defiance of existing U.S. sanctions under the Global Magnitsky Human Rights* Accountability Act, obstruction of justice, human rights crimes, and repeated acts of retaliatory persecution and torture;

**D.** Issue an order directing the U.S. Department of State, Department of Justice, and Department of Homeland Security to formally request Interpol assistance and initiate an international arrest warrant against Defendant Alexandre de Moraes under the authority of U.S. treaty obligations and federal criminal enforcement jurisdiction;

**E.** Issue a binding injunction recognizing the release of Daniel Lucio Silveira as legally, diplomatically, and morally necessary under U.S. and international law,

and further declaring any continued detention by Moraes or the Brazilian government to be in violation of international human rights obligations and subject to international sanction and diplomatic isolation;

**F.** Refer this matter immediately to the U.S. Commission on International Religious Freedom, the United Nations Human Rights Council, and the Inter-American Commission on Human Rights (OAS), urging them to initiate formal inquiries, issue emergency opinions, and place Alexandre de Moraes and co-conspirators under ongoing investigation and censure;

**G.** Grant such other and further relief as this Court may deem just, proper, and necessary to protect life, liberty, and human dignity in accordance with the United States Constitution, international law, and the principles of justice.

Respectfully submitted,

ROGERIO CHAVES SCOTTON
160 W CAMINO REAL # 102
BOCA RATON, FLORIDA 33432
E-MAIL: info@legalhelp4y.com
In Pro Se

- 24 -
Complaint for Violations of International Human Rights and Petition for Habeas Corpus

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2025, I caused the foregoing COMPLAINT FOR VIOLATIONS OF INTERNATIONAL LAW, HUMAN RIGHTS TREATIES, THE ALIEN TORT STATUTE, THE TORTURE VICTIM PROTECTION ACT, AND RELATED CLAIMS to be filed with the United States District Court for the Southern District of Florida – Palm Beach Division, and further certify that I am initiating lawful service of process upon the Defendant and relevant government bodies as follows:

1. Defendant: Justice Alexandre de Moraes
(In official and personal capacity)
Supreme Federal Court of Brazil (STF)
Praça dos Três Poderes – Brasília – DF, 70175-900, Brazil

Service Method(s):
• Courtesy electronic service via diplomatic email channels (pending formal service pursuant to Rule 4(f)(1) or (2))
• Anticipated formal service via legal representative in Brazil pursuant to Rule 4(f)(3)
• Notice of lawsuit and summons delivery via Certified International Mail

2. Courtesy Notification via Email:
Brazilian Attorney General's Office (Advocacia-Geral da União)
Email: gabinete@agu.gov.br

Brazilian Consulate in Miami
Email: consular.miami@itamaraty.gov.br

STF Secretariat or Communication Office (Legal/Diplomatic Inquiries)
Email: secretaria@stf.jus.br

3. U.S. Government Notice – Human Rights Violations
U.S. Department of State – Bureau of Democracy, Human Rights and Labor
Email: DRL-PublicAffairs@state.gov

U.S. Department of Justice – Human Rights & Special Prosecutions Section
Email: hrsp.tip@usdoj.gov

Complaint for Violations of International Human Rights and Petition for Habeas Corpus

U.S. Department of Treasury – Office of Foreign Assets Control (OFAC)
Email: OFAC_feedback@treasury.gov

U.S. Embassy – Brasília, Brazil
Email: BrasiliaACS@state.gov

4. Court Notification – Filing Confirmation
A copy of this document has been or will be submitted via Certified Mail and
Electronic Filing to:

Clerk of the Court
United States District Court
Southern District of Florida – Palm Beach Division
Email: ecfhelp@flsd.uscourts.gov

5. Anticipated Local Service in Brazil
Plaintiff is currently arranging service of process via a licensed Brazilian attorney or
judicial officer pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii) or 4(f)(3),
and in compliance with international service requirements under the Inter-American
Convention on Letters Rogatory, to ensure valid cross-border service of summons
and complaint.

ROGÉRIO CHAVES SCOTTON
160 W CAMINO REAL # 102
BOCA RATON, FLORIDA 33432
info@legalhelp4y.com

Complaint for Violations of International Human Rights and Petition for Habeas Corpus

# EXHIBIT A

**Pardon signed by Bolsonaro TO DANIEL SILVEIRA**

# DIÁRIO OFICIAL DA UNIÃO

Publicado em: 21/04/2022 | Edição: 75-D | Seção: 1 - Extra D | Página: 1

Órgão: Atos do Poder Executivo

## DECRETO DE 21 DE ABRIL DE 2022

O PRESIDENTE DA REPÚBLICA , no uso da atribuição que lhe confere o art. 84, caput , inciso XII, da Constituição, tendo em vista o disposto no art. 734 do Decreto-Lei nº 3.689, de 3 de outubro de 1941 - Código de Processo Penal, e

Considerando que a prerrogativa presidencial para a concessão de indulto individual é medida fundamental à manutenção do Estado Democrático de Direito, inspirado em valores compartilhados por uma sociedade fraterna, justa e responsável;

Considerando que a liberdade de expressão é pilar essencial da sociedade em todas as suas manifestações;

Considerando que a concessão de indulto individual é medida constitucional discricionária excepcional destinada à manutenção do mecanismo tradicional de freios e contrapesos na tripartição de poderes;

Considerando que a concessão de indulto individual decorre de juízo íntegro baseado necessariamente nas hipóteses legais, políticas e moralmente cabíveis;

Considerando que ao Presidente da República foi confiada democraticamente a missão de zelar pelo interesse público; e

Considerando que a sociedade encontra-se em legítima comoção, em vista da condenação de parlamentar resguardado pela inviolabilidade de opinião deferida pela Constituição, que somente fez uso de sua liberdade de expressão;

D E C R E T A :

Art. 1º Fica concedida graça constitucional a Daniel Lucio da Silveira, Deputado Federal, condenado pelo Supremo Tribunal Federal, em 20 de abril de 2022, no âmbito da Ação Penal nº 1.044, à pena de oito anos e nove meses de reclusão, em regime inicial fechado, pela prática dos crimes previstos:

I - no inciso IV do caput do art. 23, combinado com o art. 18 da Lei nº 7.170, de 14 de dezembro de 1983; e

II - no art. 344 do Decreto-Lei nº 2.848, de 7 de dezembro de 1940 - Código Penal.

Art. 2º A graça de que trata este Decreto é incondicionada e será concedida independentemente do trânsito em julgado da sentença penal condenatória.

Art. 3º A graça inclui as penas privativas de liberdade, a multa, ainda que haja inadimplência ou inscrição de débitos na Dívida Ativa da União, e as penas restritivas de direitos.

Brasília, 21 de abril de 2022; 201º da Independência e 134º da República.

**JAIR MESSIAS BOLSONARO**

Este conteúdo não substitui o publicado na versão certificada.

# EXHIBIT B

Violation of Separation of Powers and Due Process: Moraes Overturns Presidential Clemency for Daniel Silveira

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 1 de 285

10/05/2023                                                    PLENÁRIO

ARGUIÇÃO DE DESCUMPRIMENTO DE PRECEITO FUNDAMENTAL 966
DISTRITO FEDERAL

| | |
|---|---|
| RELATORA | : MIN. ROSA WEBER |
| REQTE.(S) | : CIDADANIA |
| ADV.(A/S) | : PAULO ROBERTO IOTTI VECCHIATTI E OUTRO(A/S) |
| INTDO.(A/S) | : PRESIDENTE DA REPÚBLICA |
| PROC.(A/S)(ES) | : ADVOGADO-GERAL DA UNIÃO |
| AM. CURIAE. | : PARTIDO TRABALHISTA BRASILEIRO - PTB |
| ADV.(A/S) | : LUIZ GUSTAVO PEREIRA DA CUNHA |
| AM. CURIAE. | : PARTIDO LIBERAL |
| ADV.(A/S) | : MARCELO LUIZ AVILA DE BESSA |

EMENTA

ARGUIÇÕES DE DESCUMPRIMENTO DE PRECEITO FUNDAMENTAL.
DECRETO DE 21 DE ABRIL DE 2022, EDITADO PELO PRESIDENTE DA REPÚBLICA.
PRELIMINARES. REJEIÇÃO. COMPETÊNCIA DO SUPREMO TRIBUNAL FEDERAL
PARA DECIDIR SOBRE A AMPLITUDE, A EXTENSÃO E OS CONTORNOS DAS
ATRIBUIÇÕES DOS PODERES DA REPÚBLICA. POSSIBILIDADE DE ANÁLISE DOS
ATOS POLÍTICOS PELO PODER JUDICIÁRIO. *CLEMENTIA PRINCIPIS*.
INSTRUMENTO DO PODER EXECUTIVO DE CONTRAPESO AO PODER JUDICIÁRIO.
INDULTO COMO *ATO POLÍTICO*, ESPÉCIE DE ATO ADMINISTRATIVO. ELEMENTOS
DO ATO ADMINISTRATIVO. CONTROLE PELO PODER JUDICIÁRIO.
LEGITIMIDADE. DESVIO DE FINALIDADE CARACTERIZADO. PEDIDO
SUBSIDIÁRIO. NÃO CONHECIMENTO. INDULTO NÃO ATINGE OS EFEITOS
SECUNDÁRIOS DA PENA, TANTO OS PENAIS QUANTO OS EXTRAPENAIS.

1. A jurisprudência desta Suprema Corte reconhece possível a
utilização da arguição de descumprimento de preceitos fundamentais
para impugnar atos de efeitos concretos, sempre que – diante da
inexistência de outro meio capaz de sanar a controvérsia de forma geral,
imediata, eficaz – acarretarem grave violação da ordem constitucional,
justificando a intervenção judicial para a tutela de direitos fundamentais

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 0B3C-9E6B-05D1-3C5D e senha 88DC-5292-E8DB-F5D4

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 2 de 285

ADPF 966 / DF

ou de interesses políticos e jurídicos socialmente relevantes. **Precedentes.**

2. O adimplemento dos deveres constitucionais impostos a este Supremo Tribunal Federal pressupõe, de maneira inexorável e intransigente, o absoluto respeito, pelos Poderes Executivo, Legislativo e pelos demais órgãos do Judiciário, às suas deliberações plenárias, pois o atuar desta Corte Suprema consubstancia expressão direta da superioridade da Constituição.

3. A esta Suprema Corte, no exercício de suas regulares atribuições, outorgadas direta e expressamente pela Carta Política, incumbe decidir sobre a amplitude, a extensão e os contornos que conformam as atribuições dos Poderes da República. **Precedentes.**

4. O perdão presidencial é um importante instrumento, à disposição do Poder Executivo, de contrapeso ao Poder Judiciário, revelando-se, pois, legítima, em tese, quando devidamente prevista no texto constitucional, a interferência de um Poder no outro.

5. Ao exame da ADI 5.874/DF, Red. p/ acórdão Min. *Alexandre de Moraes*, Tribunal Pleno, j. 09.5.2019, DJe 05.11.2020, que versou sobre a constitucionalidade de indulto de caráter coletivo, este Supremo Tribunal Federal não afirmou que a competência privativa do Presidente da República para edição do decreto de indulto se reveste de caráter absoluto, sem qualquer tipo de restrição. Ressaltada, na ocasião, a inadmissibilidade de invasão da esfera de competência privativa do Presidente da República no que diz com o mérito da concessão da *clementia principis* (juízo de conveniência e oportunidade).

6. A existência de vício em quaisquer dos elementos constitutivos do ato administrativo permite a sua legítima invalidação pelo Poder Judiciário.

7. O *ato de governo* ou *ato político*, espécie do gênero ato administrativo, reveste-se de espectro mais amplo de discricionariedade. Disso não resulta, contudo, sua insindicabilidade absoluta perante o Poder Judiciário, até porque alguns dos elementos do ato administrativo são totalmente vinculados, como, por exemplo, o sujeito, a forma e a finalidade em sentido amplo.

2

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 3 de 285

**ADPF 966 / DF**

8. Considerados os diferentes graus de vinculação, a menor vinculação do ato de governo faz-se presente no objeto, no motivo e na finalidade restrita, mas, ainda assim, é possível – mesmo que em menor extensão –, o devido controle externo pelo Poder Judiciário sem acarretar qualquer interferência no mérito administrativo e/ou violação da separação funcional de poderes.

9. A teoria do desvio de finalidade aplica-se quando o agente público competente pratica ato aparentemente lícito, mas com objetivo de atingir fim diverso do admitido pelo ordenamento jurídico, importando em violação de princípios constitucionais.

10. Configurado, na espécie, o desvio de finalidade do Decreto de 21 de abril de 2022, porquanto o Presidente da República, a despeito das razões elencada, subverteu a regra e violou princípios constitucionais, produzindo ato com efeitos inadmissíveis para a ordem jurídica. A concessão de perdão a aliado político pelo simples e singelo vínculo de afinidade político-ideológica não se mostra compatível com os princípios norteadores da Administração Pública, tais como a impessoalidade e a moralidade administrativa.

11. Admitir que o Presidente da República, por supostamente deter competência para edição de indulto, possa criar, a seu entorno, um círculo de virtual imunidade penal é negar a sujeição de todos ao *império da lei,* permitindo a sobreposição de interesses meramente pessoais e subjetivos aos postulados republicanos e democráticos.

12. O pedido subsidiário não merece ser conhecido, pois o autor não se desincumbiu do ônus processual de realizar o cotejo analítico entre as proposições normativas e os respectivos motivos justificadores do acolhimento da pretensão de inconstitucionalidade.

13. A jurisprudência deste Supremo Tribunal Federal firmou-se no sentido de que o indulto, em face da sua própria natureza jurídica, tem a aptidão apenas de extinguir a punibilidade, ou seja, atinge tão somente os efeitos principais da condenação, remanescendo íntegros os efeitos secundários penais e extrapenais.

14. Arguições de descumprimento de preceito fundamental

3

ADPF 966 / DF

**conhecidas**. Pedidos julgados **procedentes**.

## ACÓRDÃO

Vistos, relatados e discutidos estes autos, acordam os Ministros do Supremo Tribunal Federal, por maioria, conhecer da ADPF 964, vencido, no ponto, o Ministro Nunes Marques. Por unanimidade, conhecer das ADPFs 965, 966 e 967. No mérito, por maioria, julgar procedente o pedido formulado, para declarar a inconstitucionalidade do Decreto de 21 de abril de 2022, editado pelo Presidente da República à época, que concedeu "graça constitucional" ao então Deputado Federal Daniel Lucio da Silveira. Tudo nos termos dos votos proferidos, vencidos os Ministros André Mendonça e Nunes Marques, ausente, justificadamente, tendo proferido voto em assentada anterior. Sessão plenária de 10 de maio de 2023, na conformidade da ata do julgamento.

Brasília, 10 de maio de 2023.

Ministra Rosa Weber
Presidente

4

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 0B3C-9E6B-05D1-3C5D e senha 88DC-5292-E8DB-F5D4

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 5 de 285

27/04/2023                                                              PLENÁRIO

ARGUIÇÃO DE DESCUMPRIMENTO DE PRECEITO FUNDAMENTAL 966
DISTRITO FEDERAL

| | | |
|---|---|---|
| RELATORA | : | MIN. ROSA WEBER |
| REQTE.(S) | : | CIDADANIA |
| ADV.(A/S) | : | PAULO ROBERTO IOTTI VECCHIATTI E OUTRO(A/S) |
| INTDO.(A/S) | : | PRESIDENTE DA REPÚBLICA |
| PROC.(A/S)(ES) | : | ADVOGADO-GERAL DA UNIÃO |
| AM. CURIAE. | : | PARTIDO TRABALHISTA BRASILEIRO - PTB |
| ADV.(A/S) | : | LUIZ GUSTAVO PEREIRA DA CUNHA |
| AM. CURIAE. | : | PARTIDO LIBERAL |
| ADV.(A/S) | : | MARCELO LUIZ AVILA DE BESSA |

RELATÓRIO

A Senhora Ministra Rosa Weber: 1. Trata-se de quatro arguições de
descumprimento de preceito fundamental, com pedido de medida
liminar, propostas pela Rede Sustentabilidade (ADPF 964/DF), pelo
Partido Democrático Trabalhista – PDT (ADPF 965/DF), pelo Cidadania
(ADPF 966/DF) e pelo Partido Socialismo e Liberdade – PSOL (ADPF
967/DF), em face de Decreto de 21 de abril de 2022, editado pelo, à época,
Presidente da República, que concedeu *indulto individual* a DANIEL LUCIO
DA SILVEIRA, então Deputado Federal, condenado criminalmente por esta
Suprema Corte nos autos da AP 1.044/DF.

2. Eis o inteiro teor do ato questionado:

"O PRESIDENTE DA REPÚBLICA, no uso da atribuição
que lhe confere o art. 84, **caput**, inciso XII, da Constituição,
tendo em vista o disposto no art. 734 do Decreto-Lei nº 3.689, de
3 de outubro de 1941 - Código de Processo Penal, e
Considerando que a prerrogativa presidencial para a
concessão de indulto individual é medida fundamental à
manutenção do Estado Democrático de Direito, inspirado em
valores compartilhados por uma sociedade fraterna, justa e

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 6 de 285

**ADPF 966 / DF**

responsável;

Considerando que a **liberdade de expressão é pilar essencial da sociedade** em todas as suas manifestações;

Considerando que a concessão de indulto individual é medida constitucional discricionária excepcional destinada à manutenção do mecanismo tradicional de freios e contrapesos na tripartição de poderes;

Considerando que a concessão de indulto individual decorre de juízo íntegro baseado necessariamente nas hipóteses legais, políticas e moralmente cabíveis;

Considerando que ao Presidente da República foi confiada democraticamente a missão de zelar pelo interesse público; e

Considerando que **a sociedade encontra-se em legítima comoção, em vista da condenação de parlamentar resguardado pela inviolabilidade de opinião deferida pela Constituição**, que somente fez uso de sua liberdade de expressão;

DECRETA :

Art. 1º Fica concedida graça constitucional a Daniel Lucio da Silveira, Deputado Federal, condenado pelo Supremo Tribunal Federal, em 20 de abril de 2022, no âmbito da Ação Penal nº 1.044, à pena de oito anos e nove meses de reclusão, em regime inicial fechado, pela prática dos crimes previstos:

I - no inciso IV do **caput** do art. 23, combinado com o art. 18 da Lei nº 7.170, de 14 de dezembro de 1983; e

II - no art. 344 do Decreto-Lei nº 2.848, de 7 de dezembro de 1940 – Código Penal.

Art. 2º A graça de que trata este Decreto é incondicionada e será concedida independentemente do trânsito em julgado da sentença penal condenatória.

Art. 3º A graça inclui as penas privativas de liberdade, a multa, ainda que haja inadimplência ou inscrição de débitos na Dívida Ativa da União, e as penas restritivas de direitos."

**3.** Os autores afirmam preenchidos todos os requisitos necessários ao conhecimento das ADPF's, pois o Decreto impugnado (*i*) configura-se como ato do poder público e (*ii*) viola, de forma direta, preceitos

2

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 7 de 285

ADPF 966 / DF

fundamentais constantes da Carta Política, além de satisfeito o pressuposto negativo de admissibilidade (subsidiariedade), ante a ausência de qualquer outro instrumento processual, na jurisdição constitucional, hábil a questioná-lo.

**4.** Sustentam a nulidade do Decreto presidencial, tendo em vista que *concedeu graça constitucional a indivíduo que ainda não foi condenado por decisão judicial transitada em julgado.*

Segundo alegam, a mera possibilidade de interposição de recurso pelas partes – Ministério Público e réu – evidencia a ausência de definitividade da condenação e, em consequência, a viabilidade de modificação do título penal condenatório, a impedir, por si só, se possa falar de *efeitos da punibilidade a serem objeto de graça constitucional*. Nessa linha, argumentam que o fato de os títulos penais serem executados somente após o trânsito em julgado da sentença penal condenatória inibe a prática de atos de execução, *dentre eles a concessão de graça ou indulto*.

**5.** Na sequência, discorrem a respeito da relação interpessoal existente entre o Presidente da República à época, Jair Messias Bolsonaro, e o então Deputado Federal Daniel Lucio da Silveira, beneficiário do Decreto presidencial de 21 de abril de 2022, frisando a condição de aliados políticos.

Afirmam não estarem questionando a competência presidencial para conceder indulto e graça a pessoas específicas, tão só defendendo a inadmissibilidade da utilização de referida prerrogativa *de forma absolutamente corrompida, visando à obtenção de ganho pessoal com o beneficiamento indevido de aliado político e pessoal*. Caracterizado estaria, portanto, o desvio de finalidade, uma vez que o ato exarado pelo Presidente da República, imediatamente após o julgamento condenatório proferido pelo Plenário deste Supremo Tribunal Federal, *não foi praticado visando ao interesse público, em respeito aos princípios constitucionais da impessoalidade e da moralidade*, mas sim objetivando seu ganho pessoal.

Nessa linha, ressaltam que mesmo os atos de natureza política, por exemplo o decreto de indulto, devem observância aos princípios constitucionais norteadores da Administração Pública e são passíveis de

3

**ADPF 966 / DF**

apreciação pelo Poder Judiciário, sendo certo que *o contexto em que o ato foi praticado revela claramente o intuito do Presidente de fraudar a Constituição*, a evidenciar desvio de finalidade.

Apontam, desse modo, violação dos princípios constitucionais da moralidade e da impessoalidade (art. 37, *caput*, CF).

**6.** Asseveram, ainda, a ocorrência de transgressão ao princípio da separação de poderes (art. 2º da CF), pois, com o Decreto editado em 21 de abril de 2022, o Presidente da República (*i*) atribuiu-se competência para *se portar como uma instância de revisão de decisões judiciais criminais que o desagradam, sob o suposto manto da concessão da graça constitucional* e (*ii*) transmitiu recado temerário, tendo em vista que *parece dar a garantia da impunidade*.

Destacam, assim, que a incompatibilidade do Decreto questionado com a separação de poderes, *na medida em que submete o Poder Judiciário, autônomo, essencial e soberano em seus julgamentos, ao crivo pessoal do Presidente da República*.

Admitir, na espécie, tal competência presidencial seria o mesmo que garantir ao Presidente da República o exercício de um *Poder Moderador*, a tornar possível a revisão dos julgamentos proferidos pelo Poder Judiciário a qualquer tempo, por órgão estranho à sua estrutura orgânica.

Na realidade, segundo os autores, o Decreto presidencial consubstancia *inconsequente e irresponsável intento de desmoralizar o Supremo Tribunal Federal e os seus Ministros*, substitui *a decisão do Supremo Tribunal Federal, dizendo, em termos práticos, que não houve crime depois de o órgão de cúpula do Poder Judiciário ter dito o contrário,* subverte a ordem constitucional, outorgando ao Presidente da República a inadmissível competência de último intérprete da Constituição Federal.

Acentuam que a verdadeira finalidade do ato impugnado é *esvaziar a decisão do STF de modo a atingir sua credibilidade e desestabilizar sua funcionalidade corroborando uma narrativa política já apresentada contra as instituições judiciais em especial o STF e o TSE*, constituindo-se em *materialização evidente do constitucionalismo abusivo*.

Observam que a graça constitucional é *um instituto histórico e, hoje,*

4

ADPF 966 / DF

*anacrônico*, na sua essência, incompatível com os princípios da república e da separação de poderes (arts. 1º e 2º, ambos da CF), motivos pelos quais deve ser interpretado restritivamente, de forma a ser admitido apenas em situações decorrentes de *demandas humanitárias*.

**7.** Ponderam que Daniel Lucio da Silveira, Deputado Federal, foi condenado à pena de 08 (oito) anos e 09 (nove) meses de reclusão, em regime inicial fechado, pela prática dos crimes de *incitação à abolição violenta do Estado Democrático de Direito (artigo 23, inciso IV, combinado com o artigo 18 da Lei 7.170/1983) e de coação no curso do processo (art. 344 do Código Penal). Ou seja, trata-se de um crime contra a administração pública e de um crime contra a segurança nacional, hoje chamado de crime contra o Estado Democrático de Direito.*

Defendem a impossibilidade, no caso, de concessão da graça constitucional em face de necessária interpretação sistemática da Carta Política, especialmente do art. 5º, XLIII e XLIV.

O regime jurídico dos crimes contra a ordem constitucional e contra o Estado Democrático de Direito é extremamente rigoroso e a eles a Constituição impõe a inafiançabilidade e imprescritibilidade (art. 5º, XLIV, CF).

Não há, segundo as agremiações autoras, como considerar imprescritíveis e inafiançáveis os crimes contra o Estado Democrático de Direito e, ao mesmo tempo, admitir a possibilidade de concessão de indulto, graça ou anistia a tais delitos. Seria uma incongruência inaceitável.

**8.** Por fim, para amparar a arguição de inconstitucionalidade do Decreto em questão, apontam *a necessidade implícita de autodefesa do Estado Democrático de Direito, na tutela do princípio sensível da democracia. Tal cláusula de garantia torna, teleologicamente, insuscetíveis de graça, indulto ou anistia todos e quaisquer atos antidemocráticos, que, em sua essência, corroeriam os pilares da estrutura do ordenamento jurídico-político brasileiro.*

Assim, possibilitar a concessão de *graça constitucional em casos tais seria um incentivo adicional ao atentando institucional prometido veladamente pelo Presidente às eleições deste exercício*, de modo que *nenhuma serventia*

5

ADPF 966 / DF

*teria o Estado Democrático de Direito se, como um sistema, não se mostrasse capaz de se autodefender de investidas autoritárias agasalhadas oportunisticamente sob o pretenso manto amplíssimo das ditas liberdades fundamentais negativas.*

Sendo a defesa da ordem democrática um dos princípios sensíveis de nossa ordem constitucional (art. 34, VII, *a*, CF) – sua violação pode ensejar até mesmo intervenção federal –, não é aceitável interpretação que permita a concessão de graça constitucional *aos agentes do autoritarismo, que atuam concretamente para subverter o pacto constitucional*.

**9.** No mérito, pugnam pela procedência do pedido, para declarar a inconstitucionalidade do Decreto de 21 de abril de 2022, editado pelo Presidente da República, que concedeu *indulto individual* a Daniel Lucio da Silveira, Deputado Federal, condenado criminalmente por esta Suprema Corte nos autos da AP 1.044/DF e, sucessivamente, o reconhecimento *da manutenção de todos os efeitos extrapenais da condenação criminal*.

**10.** Adotado o rito do art. 12 da Lei 9.868/99, o então Presidente da República manifesta-se pela improcedência do pedido.

Afirma, em primeiro lugar, possuir competência privativa para edição de decreto de indulto que se caracteriza como ato de governo, dotado, nessa medida, de amplo espaço de discricionariedade, a tornar, o mérito respectivo, insuscetível de apreciação pelo Poder Judiciário. Assim, segundo as informações prestadas, somente admissível controle judicial do indulto em relação à conformidade do decreto com o art. 5º, XLIII, da Carta Política, conforme o decidido na ADI 5.874/DF, a prejudicar o exame das alegações de desvio de finalidade e de violação dos princípios da moralidade e da impessoalidade, enquanto visam, na realidade, a *revisitar o mérito da soberana decisão de clemência presidencial*.

Nega violação do princípio da separação de poderes, uma vez inerente, o indulto, ao sistema de freios e contrapeso. Natural seria, portanto, que, em certa medida, acarrete interferência no âmbito de competência do Poder Judiciário.

Sustenta, por fim, a possibilidade de concessão de indulto antes

6

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 11 de 285

ADPF 966 / DF

mesmo do trânsito em julgado da sentença penal condenatória conforme precedentes deste Supremo Tribunal Federal.

**11.** O Advogado-Geral da União pronuncia-se pela improcedência do pedido, consoante a seguinte ementa:

> "Decreto Presidencial de 21 de abril de 2022, da Presidência da República, que concedeu indulto individual (graça) ao Deputado Federal Daniel Lucio da Silveira, condenado pelo Supremo Tribunal Federal, em 20 de abril de 2022, no âmbito da Ação Penal nº 1.044. Ausência de afronta aos artigos 2º, 5º, inciso XLIII, e 37, *caput*, da Constituição Federal. Inexistência de vedação expressa à concessão de graça aos condenados por crimes previstos na Lei nº 7.170/1983, revogada pela Lei nº 14.197/2021, e no artigo 344 do Código Penal. Competência privativa do Presidente da República para definir a concessão do indulto (artigo 84, inciso XII, da Constituição da República). O indulto é um ato de governo, caracterizado pela ampla discricionariedade, consistindo em causa de extinção da punibilidade (artigo 107, inciso II, do Código Penal). Ato passível de excepcional controle jurisdicional apenas para aferir os limites impostos na Constituição Federal. Inexigência de trânsito em julgado para a sua concessão. Compatibilidade do ato impugnado com a Constituição da República. Ausência de violação à preceito fundamental. Manifestação pela improcedência do pedido formulado na presente arguição."

Defende que o indulto constitui medida de competência privativa do Presidente da República, sujeito apenas às restrições expressamente constantes da Constituição Federal, de modo que passível de controle, pelo Poder Judiciário, para aferição do cumprimento dos limites constitucionalmente impostos. Nessa linha, argumenta que, este Supremo Tribunal Federal, decidiu, no âmbito da ADI 5.874/DF, que apenas a Constituição da República pode estabelecer limitações ao poder presidencial de concessão de indulto.

Pugna pela improcedência do pedido diante da impossibilidade de

7

*Supremo Tribunal Federal*

ADPF 966 / DF

adentrar no mérito do decreto de indulto, indispensável ao exame das alegações de violação dos princípios da impessoalidade e da moralidade e de desvio de finalidade.

Aduz não transgredido o princípio da separação de poderes à consideração de que o indulto é instrumento inerente ao sistema de freios e contrapesos instaurado pela Constituição Federal.

Assevera, por fim, que esta Corte, ao exame da ADI 5.874/DF, firmou entendimento no sentido da possibilidade de concessão de indulto mesmo antes do trânsito em julgado da sentença penal condenatória.

**12.** O Procurador-Geral da República, por sua vez, opina, em preliminar, pelo não conhecimento da ADPF 964/DF e, sucessivamente, pela improcedência dos pedidos deduzidos nas demais ADPF's e, ainda, pelo não conhecimento do pedido subsidiário veiculado na ADPF 964/DF, em parecer assim ementado:

> "ARGUIÇÕES DE DESCUMPRIMENTO DE PRECEITO FUNDAMENTAL. PENAL E CONSTITUCIONAL. DECRETO DE 21.4.2022 DO PRESIDENTE DA REPÚBLICA. GRAÇA CONSTITUCIONAL (INDULTO INDIVIDUAL) A PARLAMENTAR CONDENADO POR CRIMES NÃO HEDIONDOS A PENA PRIVATIVA DE LIBERDADE E A MULTA ANTES DO TRÂNSITO EM JULGADO DA CONDENAÇÃO. PRELIMINAR DE NÃO CONHECIMENTO. PETIÇÃO ASSINADA POR ADVOGADA IMPEDIDA. ATO NULO. MÉRITO. DECRETO CONCESSIVO DA GRAÇA. ATO DE CARÁTER EMINENTEMENTE POLÍTICO DA COMPETÊNCIA PRIVATIVA DO PRESIDENTE DA REPÚBLICA. AMPLA LIBERDADE PARA DEFINIÇÃO DOS CRITÉRIOS DE SUA EMANAÇÃO. REVISÃO JUDICIAL RESTRITA AOS CONDICIONAMENTOS CONSTITUCIONAIS EXPRESSOS (CF, ARTS. 5º, XLIII, E 84, XII E PARÁGRAFO ÚNICO). POSSIBILIDADE DE CONCESSÃO DE GRAÇA ANTES DO TRÂNSITO EM JULGADO DA CONDENAÇÃO. ALCANCE DOS INSTITUTOS DA GRAÇA E DO INDULTO LIMITADO AO ÂMBITO DO DIREITO PENAL. NÃO

8

ADPF 966 / DF

INCIDÊNCIA SOBRE OS EFEITOS EXTRAPENAIS DA CONDENAÇÃO. PARECER PELO NÃO CONHECIMENTO DA ADPF 964 E PELA ADMISSÃO DAS DEMAIS ARGUIÇÕES, E, NO MÉRITO, PELA IMPROCEDÊNCIA DOS PEDIDOS.

1. Configura impedimento ao exercício da advocacia por servidor público federal a atuação em processo de controle concentrado em face de decreto do Presidente da República, por se tratar de ato praticado no âmbito da mesma pessoa de direito público que o remunera (União), na forma do art. 30, I, da Lei 8.906/1994 (Estatuto da OAB).

2. Por força do art. 4º, parágrafo único, da Lei 8.906/1994 (Estatuto da OAB), é nula de pleno direito a petição inicial de ADPF subscrita unicamente por advogada impedida circunstancialmente para atuar contra a pessoa jurídica de direito público União, da qual emana o ato do Poder Público questionado nesta arguição.

3. O poder de clemência soberana do Estado, de que é espécie a graça ou indulto individual, como expressão de competência constitucional qualificada por politicidade máxima, manifesta-se em atos políticos caracterizados pela mais ampla margem de avaliação política, e não se sujeitam, por isso mesmo, às limitações que incidem sobre os atos administrativos em geral, mesmo os especialmente qualificados por uma dilatada discricionariedade.

4. A graça e o indulto, por configurarem atos políticos dotados de ampla liberdade de conformação, revelam-se insuscetíveis de avaliação judicial quanto aos destinatários, ao conteúdo, às razões, aos motivos determinantes e aos fins políticos que tenham por escopo, somente se expondo a controle jurisdicional em caso de manifesta afronta às limitações materiais explícitas que gravam sobre essa espécie de ato político ou a exigências de cunho procedimental, encontradas nos arts. 5º, XLIII, e 84, XII e parágrafo único, da Constituição Federal.

5. Não afronta os arts. 5º, XLIII, e 84, XII e parágrafo único,

9

**ADPF 966 / DF**

> da Constituição Federal decreto concessivo de graça a parlamentar condenado pelo Supremo Tribunal Federal como incurso nas penas do art. 18 da Lei 7.170/1983 e do art. 344 do Código Penal, editado no exercício de competência presidencial expressamente prevista na Constituição da República.
>
> 6. O poder de clemência soberana do Estado, expresso em ato de graça ou de indulto, pode alcançar títulos judiciais não definitivos, não se deparando, na Constituição da República, com exigência, a que supostamente se condicionariam a válida emanação e ou a eficácia do ato, de trânsito em julgado da condenação. Precedente: ADI 5874/DF.
>
> 7. No Direito brasileiro, o exercício do poder de graça não interfere na suspensão dos direitos políticos, após o trânsito em julgado, em decorrência da condenação, e, tampouco, no que venha a ser ou tenha sido decidido quanto à perda de mandato político. Nenhuma interferência surte, ademais, no tocante a eventual inelegibilidade decorrente da condenação.
>
> – Parecer, preliminarmente, pelo não conhecimento da ADPF 964, e pela admissibilidade das demais arguições de descumprimento de preceito fundamental, e, no mérito, pela improcedência dos pedidos."

Em seu parecer, o Procurador-Geral da República aponta preliminar de não conhecimento da ADPF 964/DF, tendo em vista que a advogada subscritora da inicial exerce cargo em comissão no Senado Federal, estando, pois, impedida, a teor do art. 30, I, do Estatuto da OAB, de exercer a advocacia em face da pessoa jurídica que a remunera.

Na sequência, discorre sobre os institutos da graça e do indulto, asseverando ambos sujeitos ao juízo político exclusivo do Presidente da República, submetidos tão somente às limitações expressas na Constituição Federal (competência, art. 84, XII e parágrafo único, CF e vedação à concessão a pessoas condenadas por determinados crimes art. 5º, XLIII, CF). Assim, enquanto ato político, inaplicável ao indulto a teoria do desvio de finalidade. Admiti-la teria como consequência a *anulação do sentido constitucional da competência do Poder Executivo ou na transferência ou*

10

*Supremo Tribunal Federal*

ADPF 966 / DF

*esbulho de competência alheia, propiciada pela inteira sujeição de seu manejo a juízo estranho de órgão de Poder ao qual não se atribuiu, constitucionalmente, sua externação*. Nessa linha, sustenta que os ato políticos, embora devam estar em consonância com o interesse público, não se submetem ao regime inerente aos demais atos administrativos, o que redunda em âmbito de cognoscibilidade judicial émais limitado.

Afirma a inexistência de impedimento constitucional para concessão de indulto aos crimes imputados ao Deputado Federal Daniel Lúcio da Silveira e, também, a impossibilidade de ampliação das restrições impostas a esse poder de clemência presidencial pela via hermenêutica.

Aduz a legitimidade de concessão de indulto antes do trânsito em julgado de sentença penal condenatória, conforme já decidido por esta Suprema Corte ao exame da ADI 5.874/DF.

Por fim, pugna pelo não conhecimento do pedido sucessivo formulado da ADPF 964/DF aos seguintes argumentos: (*i*) o art. 3º do Decreto impugnado não versa sobre os efeitos secundários penais e extrapenais, de modo que o objeto não existe e (*ii*) o partido autor deixou de cumprir ônus processual que lhe cabia de fundamentar e impugnar especificamente o art. 3º de referido ato estatal.

Caso superado o não conhecimento, sustenta, com base na jurisprudência consolidada deste Supremo Tribunal Federal e do Superior Tribunal de Justiça, que a concessão de indulto não abrange os efeitos secundários penais e extrapenais, motivo pelo qual *o exercício do poder de graça não interfere na suspensão dos direitos políticos, após o trânsito em julgado, em decorrência da condenação, e, tampouco, no que venha a ser ou tenha sido decidido quanto à perda de mandato político. Nenhuma interferência surte, ademais, no tocante a eventual inelegibilidade decorrente da condenação, que poderá ser objeto de apreciação pela Justiça Eleitoral*.

**13.** Admitidos no feito o Partido dos Trabalhadores – PT, o Partido Trabalhista Brasileiro – PTB e o Partido Liberal – PL na condição de *amici curiae*.

**14.** Em 22.3.2023, Daniel Lucio da Silveira, por meio da Petição/STF 27.784/2023, requer seja reconhecida a perda de objeto destas ações do

11

*Supremo Tribunal Federal*

Inteiro Teor do Acórdão - Página 16 de 285

ADPF 966 / DF

controle concentrado, pelos fundamentos ora transcritos:

"CONSIDERANDO que a liminar requerida nas ADPFs não foi deferida ao tempo que solicitada,

CONSIDERANDO que não há NENHUM ATO JUDICIAL que tenha suspendido os efeitos do aludido decreto,

CONSIDERANDO que a Procuradoria-Geral da República manifestou-se pelo NÃO CONHECIMENTO DAS ADPFs, ou no mérito pela IMPROCEDÊNCIA de ambas,

CONSIDERANDO que a Procuradoria-Geral da República manifestou-se pela LEGALIDADE e PERTINÊNCIA do ato combatido, inclusive requerendo a extinção da punibilidade e revogação de medidas cautelares e prisão (Doc. 04 e 05),

CONSIDERANDO que não se vislumbrou nenhum vício ou desvio de finalidade no ato de clemência presidencial;

CONSIDERANDO que o ato impugnado está previsto no Art. 84, XII, da Constituição Federal, é e de competência privativa do Chefe do Executivo Federal,

CONSIDERANDO que há precedentes na Excelsa Corte de desnecessidade de trânsito em julgado para o reconhecimento da extinção da punibilidade do beneficiário, ora Requerente, ADI 5874/DF,

CONSIDERANDO que houve a certificação do trânsito em julgado da AÇÃO PENAL 1044/DF, desde 09/08/2022 (Doc. 03),

CONSIDERANDO que houve PERDA SUPERVENIENTE DO OBJETO após a certificação do trânsito em julgado pela Corte,

CONSIDERANDO a aplicação da teoria do fato consumado, aceita pela jurisprudência e doutrina,

CONSIDERANDO a segurança jurídica, que visa proteger o direito adquirido, o ato jurídico perfeito e a coisa julgada (Art. 5º, XXXVI, CF 1988),

CONSIDERANDO os vícios de representação da ADPF 964, apontados pela Procuradoria-Geral da República,

CONSIDERANDO a impertinência da utilização da ADPF para fins políticos-eleitoreiros, e impugnação do ato combatido,

12

*Supremo Tribunal Federal*

**ADPF 966 / DF**

> VIA INADEQUADA, conforme precedentes, ADI 5874/DF,
>
> CONSIDERANDO que o pleito eleitoral de 2022 já foi finalizado, ainda em 2022, pelo que é de conhecimento de todos,
>
> CONSIDERANDO o respeito aos atos privativos do Chefe do Poder Executivo,
>
> CONSIDERANDO o respeito aos direitos humanos,"

**É o relatório**.

13

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código A48D-08E7-88C9-4FC4 e senha 8774-F8B2-0D51-747F

Legislação Informatizada - DECRETO DE 21 DE ABRIL DE 2022 - Publicação Original

Veja também:

**Dados da Norma**

# DECRETO DE 21 DE ABRIL DE 2022

Concede graça constitucional a Daniel Lucio da Silveira, Deputado Federal.

**O PRESIDENTE DA REPÚBLICA**, no uso da atribuição que lhe confere o art. 84, *caput*, inciso XII, da Constituição, tendo em vista o disposto no art. 734 do Decreto-Lei nº 3.689, de 3 de outubro de 1941 - Código de Processo Penal, e

Considerando que a prerrogativa presidencial para a concessão de indulto individual é medida fundamental à manutenção do Estado Democrático de Direito, inspirado em valores compartilhados por uma sociedade fraterna, justa e responsável;

Considerando que a liberdade de expressão é pilar essencial da sociedade em todas as suas manifestações;

Considerando que a concessão de indulto individual é medida constitucional discricionária excepcional destinada à manutenção do mecanismo tradicional de freios e contrapesos na tripartição de poderes;

Considerando que a concessão de indulto individual decorre de juízo íntegro baseado necessariamente nas hipóteses legais, políticas e moralmente cabíveis;

Considerando que ao Presidente da República foi confiada democraticamente a missão de zelar pelo interesse público; e

Considerando que a sociedade encontra-se em legítima comoção, em vista da condenação de parlamentar resguardado pela inviolabilidade de opinião deferida pela Constituição, que somente fez uso de sua liberdade de expressão;

**DECRETA:**

Art. 1º Fica concedida graça constitucional a Daniel Lucio da Silveira, Deputado Federal, condenado pelo Supremo Tribunal Federal, em 20 de abril de 2022, no âmbito da Ação Penal nº 1.044, à pena de oito anos e nove meses de reclusão, em regime inicial fechado, pela prática dos crimes previstos:

I - no inciso IV do *caput* do art. 23, combinado com o art. 18 da Lei nº 7.170, de 14 de dezembro de 1983; e

II - no art. 344 do Decreto-Lei nº 2.848, de 7 de dezembro de 1940 - Código Penal.

Art. 2º A graça de que trata este Decreto é incondicionada e será concedida independentemente do trânsito em julgado da sentença penal condenatória.

Art. 3º A graça inclui as penas privativas de liberdade, a multa, ainda que haja inadimplência ou inscrição de débitos na Dívida Ativa da União, e as penas restritivas de direitos.

Brasília, 21 de abril de 2022; 201º da independência e 134º da República.

JAIR MESSIAS BOLSONARO

Este texto não substitui o original publicado no Diário Oficial da União - Seção 1 - Edição Extra - D de 21/04/2022

**Publicação:**
- Diário Oficial da União - Seção 1 - Edição Extra - D - 21/4/2022, Página 1 (Publicação Original)

# EXHIBIT C

**Photo Evidence: Daniel Silveira Receiving Hospital Treatment at the Time of Moraes's Order for Immediate Re-Imprisonment**

This photo documents former Federal Deputy Daniel Lucio Silveira undergoing urgent hospital treatment during the time Justice Alexandre de Moraes issued an order to return him to prison. The timing and nature of the judicial action constitute a violation of international human rights standards, including the right to medical care, humane treatment, and protection from arbitrary or politically motivated punishment.

 **DR. PAULO FARIA** ✔ @drpaulofaria22 · 4 h     ...

A Defesa de Daniel Lúcio da Silveira informa que nesta manhã de sábado (02/08) IMPETROU DOIS HABEAS CORPUS no plantão judicial no STF, em seu favor, para que possa REALIZAR A FISIOTERAPIA determinada pela equipe médica ANTES e DEPOIS da cirurgia de 26/07.

Pela experiência anterior, Paulo Faria disse: "Vão ignorar".

"Fazem questão de ver Daniel sofrer e sucumbir", afirmou o advogado.

"DANIEL ESTÁ SOB TORTURA"!
#DANIELSOBTORTURA



○ 146     ⇆ 966     ♡ 2 mil     ıllı 83 mil     🔖 ⬆

# EXHIBIT D

Political Persecution and Disproportionate Sentencing of Débora Rodrigues dos Santos
Description:
This exhibit contains official news articles, legal summaries, and sentencing details regarding the case of Débora Rodrigues dos Santos, a Brazilian mother of two, who was sentenced by the Brazilian Supreme Federal Court (STF) to 14 years in prison and a fine of R$35 million reais. Ms. Rodrigues was prosecuted for her alleged participation in peaceful political demonstrations on January 8, 2023, in Brasília. Notably:

She had already served two years in pretrial detention under harsh conditions, without trial or conviction, which the court refused to credit toward her sentence.

The charges included "attempted abolition of the democratic rule of law" and "incitement of a coup", though no weapons, violent conduct, or coordination were ever proven.

Ms. Rodrigues has no prior criminal record and is the sole caretaker of two minor children.

The R$35 million fine was applied jointly with over 100 others, effectively turning symbolic protest participants into life-destroying financial debtors.

Relevance:
This exhibit demonstrates the cruelty, disproportionality, and political bias of recent rulings by STF justices, particularly Justice Alexandre de Moraes. It underscores the denial of due process, family rights, and international human rights standards, especially under the American Convention on Human Rights (Pact of San José) and the Universal Declaration of Human Rights. The case also reveals systematic suppression of peaceful dissent, and the non-application of proportionality principles in sentencing—a core component of international and constitutional law.

Supporting Citations:

Brazilian Penal Code (Art. 29 and Art. 288-A)

American Convention on Human Rights, Arts. 7, 8, 25

Universal Declaration of Human Rights, Arts. 9, 10, 12

BRAZIL

# Brazil Sentenced a Woman to 14 Years for Lipstick Graffiti

Débora Albuquerque scrawled "You lost, dude" on a statue. Now she's being treated like a national security threat.

**IZABELA PATRIOTA** | 3.27.2025 10:39 AM

   



(Bob Karp/ZUMAPRESS/Newscom)

On January 8, 2023—on what has been called Brazil's own January 6 —chaos, vandalism, and authoritarian overreach were prominently on display in Brasília following the defeat of President Jair Bolsonaro. But few could have expected that two years later, someone would be sentenced to 14 years in prison for writing "Perdeu, mané" ("You lost, dude") on a statue—in lipstick.

Débora Albuquerque—infamous now as "Débora do Perdeu, Mané"— was convicted of armed criminal association, violent abolition of the democratic rule of law, attempted coup, and defacing protected property. Yet she was not armed, didn't lead anyone, and never breached a government building. Her entire contribution to Brazil's so-called coup attempt amounted to scrawling a message in red lipstick on the statue of *The Justice* outside the Supreme Federal Court.

Vandalizing public monuments may not be an ideal mode of protest. But graffiti—or *pichação*—has long been a form of political expression. Until recently, nobody thought it the act of a dangerous insurrectionist.

Advertisement

AD

In fact, the same statue was previously defaced during a pro-choice protest, and those responsi[...] consequences. (As a vocal pro-choice advocate, I found the symbolism of the statue having a m[...] don't necessarily support that kind of protest.)

But what's far worse than the act itself is the selective application of the law, punishing dissent [...] rather than principle. If Albuquerque had stolen billions in a corruption scandal, she'd probabl[...] presidency. Instead, she's confined with limited visitation for a nonviolent, symbolic act of pro[...]



-25%    -28%    -48%    -25%    -25%    -25%    -30%

Using red lipstick to write on a statue does not make someone a militia leader. Albuquerque is not George Washington leading a revolution. She's a 40-year-old mother of two with no criminal record. Yet she's being treated as if she led an armed insurgency against the Brazilian state.

Her real crime was not what she did—it was who she opposed.

The judge behind this political theater is Supreme Federal Court Justice Alexandre de Moraes, the architect behind Brazil's sprawling "Fake News Operation." Originally created to investigate online disinformation, the operation has morphed into a blunt instrument for silencing dissent, jailing political opponents, and censoring journalists and tech platforms. Moraes presents himself as a defender of democracy. However, his methods—secret arrests, media blackouts, and now, a 14-year sentence for a single act of nonviolent protest—are indistinguishable from an authoritarian regime.

It's easy to roll your eyes at Albuquerque's lipstick protest. It's much harder to justify locking her away for over a decade because of it. Authoritarianism rarely announces itself with tanks in the streets. More often, it creeps in wearing judicial robes, promising to protect democracy while quietly criminalizing dissent.

Freedom of speech and freedom of association mean nothing if they only apply to those who align with the ones in power.

Albuquerque's message was unserious, but so what? Democracies aren't supposed to punish bad taste with a decade of incarceration. "You lost, dude" is hardly a political manifesto, but it was enough to get her treated like a national security threat. That should worry all of us.

Start your day with *Reason*. Get a daily brief of the most important stories and trends every weekday morning when you subscribe to *Reason Roundup*.

| Email Address | subscribe |

### *NEXT:* Tariff Nation

Izabela Patriota","per_e":"izabela.patriota@ladiesofliberty.org","type":"person"}" > Izabela Patriota holds a Ph.D. in law and political economy from University of São Paulo. She is the director of development of the Ladies of Liberty Alliance and a Young Voices contributor.

BRAZIL   JANUARY 6   JAIR BOLSONARO   PROTESTS   AUTHORITARIANISM   POLICE STATE



MEDIA CONTACT & REPRINT REQUESTS

🗨 Show Comments (20)

## RECOMMENDED

**10 years in prison for selling a T-shirt of a Hugo Chávez statue getting smashed**

**Canada seeks to jail Freedom Convoy organizers for 8 years**

**Montreal fines church $2,500 for hosting controversial American singer**

**Californians can now buy gun ammo online just like free Americans**

**Chris Arnade on Walking Around the World**



Debora Rodrigues, 39, was convicted of involvement with a criminal organization intending to launch a coup. (Brazilian Supreme Court)

However, she didn't expect to be prosecuted for writing the message, and told the jury that she was unaware of the scale of the protests.

"I went to the protests and I didn't imagine that they would be so turbulent," Rodrigues was quoted as saying, according to the BBC.

**RUMBLE, TRUMP MEDIA DECLARE 'COMPLETE VICTORY FOR FREE SPEECH' IN WIN AGAINST BRAZILIAN JUDGE**



Brazil's former President Jair Bolsonaro speaks to the press as he arrives at the Brasilia International Airport in Brasilia, Brazil, on March 25, 2025. (AP Photo/Luis Nova)

"I have never done anything illegal in my life," she added.

According to the BBC, Justice Alexandre de Moraes argued that the hairdresser "consciously and voluntarily" aligned herself with protesters seeking to overthrow the Brazilian government.

The justice also accused Rodrigues of concealing evidence by possibly deleting messages on her phone, and said that the 39-year-old had admitted to taking part in "anti-democratic acts."

The lengthy nature of the sentence has been used by Bolsonaro supporters to argue that they are victims of political persecution by the left-wing Lula administration, working in conjunction with Brazil's Supreme Court.

Bolsonaro himself has called for amnesty for Rodrigues in a post on X.

**CLICK HERE TO GET THE FOX NEWS APP**



Former Brazilian President Jair Bolsonaro arrives for a luncheon with senators from his support base, at the National Congress building in Brasilia, Brazil, Tuesday, Feb. 18, 2025. (AP Photo/Eraldo Peres)

In March, Bolsonaro was ordered to stand trial over the alleged coup attempt to stay in office after his 2022 election defeat. The right-wing politician, who has an ongoing power struggle against Lula, was also told by the Brazilian Supreme Court that he is not permitted to run in 2026.

*The Associated Press contributed to this report.*

Andrea Margolis is a lifestyle writer for Fox News Digital and Fox Business. Readers can follow her on X at @andreamargs or send story tips to andrea.margolis@fox.com.